

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-09-00112-CV

_____

WENDELL WATSON, Appellant

V.

TELECHECK SERVICES, INC., AND
TRS RECOVERY SERVICES, INC., Appellees

On Appeal from the 123rd Judicial District Court
Panola County, Texas
Trial Court No. 2007-433

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

This opinion on rehearing is issued as a substitute for our original opinion issued September 3, 2010.

In the events described by Wendell Watson's pleadings, Watson was gambling at Harrah's Casino with $1,000.00 in cash he obtained from Harrah's in exchange for his personal check in that amount, when a dispute arose resulting in Harrah's confiscating his cash and ejecting him from the premises. That started a chain of events resulting in this appeal.

Because Harrah's took his cash, Watson stopped payment on his check. Because Watson stopped payment on his check, Harrah's called on Telecheck Services, Inc. (Telecheck), a check verification and warranty company, to purchase the check. Telecheck purchased the check; listed Watson negatively in a database accessed by Telecheck's customers; and hired TRS Recovery Services, Inc. (TRS), to attempt to collect the check from Watson. Some merchants refused to take Watson's checks. Watson contacted Telecheck to dispute the debt and demand that his negative listing be removed. Telecheck refused. Watson sued Telecheck and TRS for defamation, intentional infliction of emotional distress, violation of the Texas Consumer Credit Reporting Act, and violation of the Fair Debt Collection Practices Act (FDCPA), as well as, he claims, illegality and extrinsic fraud. Telecheck and TRS sought and were awarded a summary judgment denying all of Watson's claims.[1]

---

[1]Defendants argued that Watson's claims for defamation were barred by truth, qualified privilege, limitations, and laches. They defended his claims under Chapter 20 of the Texas Business and Commerce Code based on the statute.

2

We affirm the summary judgment in part and reverse it in part. As to Watson's cause of action under the Consumer Credit Reporting Act,[2] we affirm the summary judgment, because (1) neither defendant is a consumer reporting agency as defined by the Act. As to Watson's alleged cause of action for illegality of contract—which is not addressed in the summary judgment—we overrule Watson's related point of error as moot, because (2) Watson did not plead a cause of action for illegality of contract. As to Watson's cause of action for extrinsic fraud, we affirm the summary judgment, because (3) Watson's allegation of extrinsic fraud is an evidentiary issue not preserved for appeal. As to all other causes of action[3] asserted by Watson, we reverse the summary judgment and remand this cause to the trial court for further proceedings, because (4) there is a fact issue concerning whether Watson owed a debt, (5) there is a fact issue concerning whether defendants had actual malice, and (6) there is a fact issue concerning when Watson's causes of action accrued.

A trial court's summary judgment is reviewed de novo. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494 (Tex. 2010); *Tex. Mun. Power Agency v. Pub. Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007). Summary judgment is proper when a movant establishes that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. TEX. R.

They asserted that his claims for intentional infliction of emotional distress and violations of the FDCPA were barred by limitations and that the claims for illegality and extrinsic fraud were not preserved for our review.

[2]TEX. BUS. & COM. CODE ANN. §§ 20.01–.13 (Vernon 2009).

[3]The other asserted causes of action are defamation (whether simple or per se), intentional infliction of emotional distress, and violation of the FDCPA.

CIV. P. 166a(c); *French v. Gill*, 252 S.W.3d 748, 751 (Tex. App.—Texarkana 2008, pet. denied); *Powers v. Adams*, 2 S.W.3d 496, 497 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985)). The movant has the burden to conclusively disprove one element of the challenged cause of action or to conclusively prove all of the elements of an affirmative defense. *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004); *Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643, 645–46 (Tex. 2000). In deciding whether there is a disputed material fact issue which precludes summary judgment, proof favorable to the nonmovant will be taken as true. *Nixon*, 690 S.W.2d at 548–49. We indulge every reasonable inference in favor of the nonmovant. *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002). Because the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court are meritorious. *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005); *Hill v. Bartlette*, 181 S.W.3d 541, 544 (Tex. App.—Texarkana 2005, no pet.) (citing *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995)).

*(1)      Neither Defendant Is a Consumer Reporting Agency*

Watson contends that the trial court erred in granting summary judgment because there are genuine issues of material fact and "questions of whether the law was correctly applied" as to whether Telecheck is civilly liable pursuant to Chapter 20 of the Texas Business and Commerce Code.

4

Chapter 20 of the Texas Business and Commerce Code governs the regulation of consumer credit reporting agencies. TEX. BUS. & COM. CODE ANN. §§ 20.01–.13. A "consumer reporting agency" that willfully or negligently violates the provisions of Chapter 20 is civilly liable to the consumer. TEX. BUS. & COM. CODE ANN. § 20.09. The term "consumer reporting agency," though, does not include "a business entity that provides only check verification or check guarantee services." TEX. BUS. & COM. CODE ANN. § 20.01(5). Here, there is no dispute that Telecheck provides only check verification and guarantee services.

When interpreting a statutory provision, we seek to find and apply the intent of the Legislature; and if the text is unambiguous, we will be guided by "the statute's plain language unless that interpretation would lead to absurd results." *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 176–77 (Tex. 2004); *see City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). The plain language of Section 20.09 of the Texas Business and Commerce Code excludes Telecheck from civil liability. TEX. BUS. & COM. CODE ANN. § 20.09. Watson fails to cite to any authority in support of his argument that Telecheck is liable under Section 20.09 as a "consumer reporting agency," and we find none. Therefore, Telecheck is entitled to judgment as a matter of law on this cause of action.

Further, nothing in Chapter 20 indicates that a collection and recovery entity, such as TRS, falls under its purview and authority. *See* TEX. BUS. & COM. CODE ANN. §§ 20.01–.13.

Accordingly, we affirm the summary judgment as to this cause of action.

*(2)      Watson Did Not Plead a Cause of Action for Illegality of Contract*

Watson contends that the summary judgment was erroneous because Telecheck failed to address his claim of illegality in its summary judgment motion and because genuine issues of material fact exist regarding contract illegality.

In its summary judgment motion, Telecheck directly addressed its affirmative defenses to each cause of action stated in Watson's fourth amended petition.   A few days later, Watson timely filed his fifth amended petition and his response to Telecheck's motion.   Telecheck's motion does not address any claim of illegality, and Watson argues that the fifth amended petition raised illegality as a new cause of action.

Watson claims his fifth amended petition alleges that Telecheck's contracts are illegal and that Telecheck did not address such allegations in its motion for summary judgment.   Watson's response to Telecheck's motion states, however, that:

> [Watson] has filed his FIFTH AMENDED ORIGINAL PETITION to alleviate [Telecheck's] erroneous conclusions about the allegations of his action, and respectfully requests that the Court take judicial knowledge of [Watson's] allegations therein, where causes of action are alleged for (1) per se defamation; (2) mental anguish and emotional distress; (3) violations of the Fair Credit Reporting Act; (4) violations of the Consumer Credit Reporting Agencies [sic] Act; and (5) exemplary damages for acting with malice and/or violating the aforesaid statutes.

6

By its plain language, Watson's response unambiguously lists the causes of action he alleges in his fifth amended petition, and the list does not include a claim that Telecheck's contracts are illegal. A party may not take a position on appeal that is inconsistent with its position in the trial court. *See Bulington v. State*, 179 S.W.3d 223, 232–33 n.7 (Tex. App.—Texarkana 2005, no pet.) (citing *Litton Indus. Prod., Inc. v. Gammage*, 668 S.W.2d 319, 321–23 (Tex. 1984)); *Nebgen v. Minn. Mining & Mfg. Co.*, 898 S.W.2d 363, 366 (Tex. App.—San Antonio 1995, writ denied); *Stewart & Stevenson Servs. v. Enserve, Inc.*, 719 S.W.2d 337, 341 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Watson cannot now complain that Telecheck failed to address a cause of action that he failed to plead at trial. No issue of illegality of contract has been pled or ruled on. Because the trial court did not expressly grant summary judgment on any such claim, we overrule this point of error as moot.

(3)     *Watson's Allegation of Extrinsic Fraud Is an Evidentiary Issue Not Preserved for Appeal*

Watson alleges that Telecheck served him with its summary judgment motion and intentionally removed Exhibits B and C to prevent him from knowing that Telecheck attached evidence of his criminal history to their summary judgment evidence. Watson alleges that complete copies, containing the "missing" exhibits, were filed with the trial court. He argues that Telecheck's failure to include the missing pages in his copy of the motion amounts to extrinsic fraud.

Exhibit B to the motion for summary judgment consists of Watson's "First Amended and

7

Supplemented Plaintiff's Answers and Objections to *Telecheck Services, Inc.* Request for Interrogatories, Admissions and Production" and the various documents attached thereto. Exhibit C consists of Watson's "First Amended and Supplemented Plaintiff's Answers and Objections to *TRS Recovery Services, Inc.* Request for Interrogatories, Admissions and Production" and the various documents attached thereto. These two exhibits were, presumably, items with which Watson was quite familiar, having prepared or produced these items himself.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling. *See* TEX. R. APP. P. 33.1(a); *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992) (op. on reh'g). If a party fails to do this, error is not preserved, and the complaint is waived. *See Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g).

Here, the final summary judgment was signed and filed September 10, 2009. Watson objected to Telecheck's proffered evidence four days later in a letter dated and filed September 14, 2009. Even if Watson's allegations are taken as true, Watson knew or should have known that the exhibits were missing for more than a month before the trial court's summary judgment decision, and he failed to inquire or object regarding their contents during that time. Further, Watson has presented no argument or authority excusing his failure to make a timely objection. Because Watson's objection was not timely made, this issue was not preserved for our review. We overrule this point of error.

8

*(4)*     *There Is a Fact Issue Concerning Whether Watson Owed a Debt*

Watson argues that the summary judgment was erroneous because there is a material issue of fact regarding the affirmative defense of truth asserted by the defense in contravention of the defamation cause of action. The fact question here is whether Watson owed a debt, as was allegedly uttered when Telecheck negatively listed Watson in its database or when its customers accessed that database to check on Watson's listed status.

For a private individual to sustain a defamation claim, the plaintiff must prove that the defendant: (1) published a false statement; (2) that was defamatory concerning the plaintiff; (3) while acting with negligence regarding the truth of the statement. *See WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).

When a check is presented to a merchant subscribing to Telecheck's services, the merchant scans the check and information from the check is transmitted to Telecheck for processing. If Telecheck will warrant the check, the merchant receives only a single-digit numerical code response of "1," effectively approving the individual's check as payment. If the processing reveals evidence the check maker has unpaid check-related debt, Telecheck will not warrant the check and the merchant receives a single-digit numerical code response of "4."

Here, it is undisputed that Telecheck placed Watson on its negative database, refused to warrant his checks, and responded to its inquiring merchants with a code "4" regarding Watson, because he had stopped payment on the Harrah's check. By giving a code "4" response,

9

Telecheck informed subscribing merchants that Watson had unpaid check-related debt. Therefore, to successfully assert truth in its summary judgment proceeding, Telecheck had the burden of conclusively proving, through its summary judgment evidence, that Watson owed unpaid check-related debt.

Watson has consistently denied owing a debt related to the Harrah's check, and he alleged that he stopped payment on the check because Harrah's confiscated the funds for which it was written. In its motion for summary judgment, Telecheck acknowledged that the debt is in dispute and failed to produce any evidence to the contrary. Because Telecheck has failed to conclusively prove that Watson owed a check-related debt, we sustain Watson's point of error on this issue.

*(5)     There Is a Fact Issue Concerning Whether Defendants Had Actual Malice*

Watson also argues that the summary judgment on qualified privilege as a defense to his defamation claim was improper because Telecheck failed to conclusively prove an absence of malice.[4]

A qualified privilege extends to statements made in good faith on a subject in which the maker has an interest or duty, to another person having a corresponding interest or duty. *Dixon v. Sw. Bell Tel. Co.*, 607 S.W.2d 240 (Tex. 1980); *Leatherman v. Rangel*, 986 S.W.2d 759 (Tex. App.—Texarkana 1999, pet. denied); *Martin v. Sw. Elec. Power Co.*, 860 S.W.2d 197 (Tex. App.—Texarkana 1993, writ denied). To establish a qualified privilege in a summary judgment

---

[4]Due to our ruling on this issue, we need not address Watson's claim that the statements were made to persons not having an interest or duty in the matter.

proceeding, the defendant has the burden to conclusively establish that the allegedly defamatory statement was made in the absence of actual malice. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995); *see also Dixon*, 607 S.W.2d at 242. Malice means the defendant made the defamatory statement with knowledge of its falsity or in reckless disregard as to its truth. *Thomas-Smith v. Mackin*, 238 S.W.3d 503 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

In the absence of controverting evidence, an affidavit revealing the allegedly defamatory statement's sources as "reliable, identified sources" and denying any doubts as to the truth of the published statement is sufficient to negate actual malice, as a matter of law. *Mitre v. La Plaza Mall*, 857 S.W.2d 752, 754 (Tex. App.—Corpus Christi 1993, writ denied); *Johnson v. Sw. Newspapers Corp.*, 855 S.W.2d 182, 187 (Tex. App.—Amarillo 1993, writ denied) (no controverting evidence found, because plaintiff's affidavit argued failure to investigate, rather than actual malice).

As part of its summary judgment evidence, Telecheck submitted the affidavit of Stephen Moore stating that it purchased the check as warrantor pursuant to its contract with Harrah's, placed Watson in its database as someone having an unpaid debt because of the stop-payment order, and that, at the time, it "believed this statement to be true and had no reason to doubt its veracity." Here, however, in contrast to *Johnson* and similar cases, there is evidence in the record that Watson repeatedly contacted Telecheck denying that he owed the debt and informing them that Harrah's confiscated the funds for which the check was written, thereby negating the debt

11

itself. So, here, there is evidence contradicting the defense affidavits. It is for the trier of fact to resolve any dispute in the evidence as to the publication and the circumstances under which the publication was made. *See First State Bank of Lyford v. Parker*, 28 S.W.2d 269 (Tex. Civ. App.—San Antonio 1930, writ dism'd).

Taking the evidence favorable to Watson as true and indulging every reasonable inference in his favor, as we must, we find that Telecheck and TRS have failed to conclusively prove an absence of actual malice because a material fact is in dispute. *See Nixon*, 690 S.W.2d at 548–49; *McNamara*, 71 S.W.3d at 311. Therefore, we sustain Watson's argument on this point.

*(6)    There Is a Fact Issue Concerning When Watson's Causes of Action Accrued*

Watson also contends that the summary judgment was erroneous because Telecheck and TRS failed to prove that Watson's suit was filed after the statutes of limitations had expired on his claims of defamation, intentional infliction of emotional distress, and violations of the FDCPA.

A suit for libel or slander must be brought within one year of the day the cause of action accrues. TEX. CIV. PRAC. & REM. CODE ANN. § 16.002(a) (Vernon 2002). A claim for a violation of the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d) (West, Westlaw 2010). A plaintiff must bring a claim for intentional infliction of emotional distress within two years of the accrual of the cause of action. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (Vernon Supp. 2010); *Patrick v. McGowan*, 104 S.W.3d 219 (Tex. App.—Texarkana 2003, no pet.).

The discovery rule is a very limited exception to statutes of limitations and applies only in those cases in which the nature of the injury is both inherently undiscoverable and objectively verifiable. *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001). The discovery rule exception operates to defer the accrual of a cause of action until the plaintiff knows, or in the exercise of reasonable diligence should know of the facts giving rise to the claim.[5] *Id.* A defendant moving for summary judgment must prove that there is no genuine issue of material fact as to when a plaintiff discovers or should have discovered his or her cause of action. *See KPMG Peat Marwick v. Harrison County Housing Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).

Here, it is undisputed that, on or about August 4, 2003, Telecheck put Watson in its database as a person with unpaid, check-related debt. Nothing in the summary judgment record, however, establishes how Watson knew or should have known of the event at that time. In responses to discovery, Watson admitted that he had at least one check declined in each of 2003, 2004, and 2005. The summary judgment record is silent as to whether the merchants declining those checks subscribed to Telecheck's services or whether the merchants declined to accept the checks because of a communication from Telecheck, not to mention whether Watson knew of any linkage to Telecheck in those events.[6] It is true that Watson was asked during a previous hearing, "I think you've testified earlier that you've known that you've been on the check data base for

---

[5]While he does not explicitly state as much, Watson's arguments on this issue invoke the discovery rule.
[6]In his brief, Watson argues that he had a check declined February 10, 2006, and that his cause of action could not have accrued before that date. As conceded in Telecheck's brief, however, that date is not supported by the summary judgment record and was not before the trial court for consideration at the time of the summary judgment ruling.

13

some time now, about four years, right?" Watson replied, "That's correct." Unclear from that exchange is whether Watson is testifying that he has known of Telecheck's negative listing for four years or whether he now knows that he has been on Telecheck's list for four years.

We must indulge every reasonable inference in Watson's favor, and we find that a reasonable trier of fact could determine that Watson could not have reasonably known of Telecheck's listing until a later date within the applicable statute of limitations. *See Nixon*, 690 S.W.2d at 548–49; *McNamara*, 71 S.W.3d at 311. Therefore, a material issue of fact exists concerning when Watson knew or should have known facts that would cause limitations to begin running against his causes of action. Accordingly, we sustain Watson's assertions on this point.[7]

Accordingly, as to Watson's alleged causes of action under the Consumer Credit Reporting Act and for extrinsic fraud, we affirm the summary judgment in favor of defendants; as to Watson's point of error for illegality of contract, we overrule it as moot; and, as to all other causes

---

[7]Laches does not apply here. Generally, in order to establish a laches defense, the defendants must show (1) the plaintiffs unreasonably delayed in asserting their claim, and (2) the defendants have detrimentally changed their position because of the delay. *Wayne v. A.V.A. Vending, Inc.*, 52 S.W.3d 412, 415 (Tex. App.—Corpus Christi 2001, pet. denied); *Green v. Parrack*, 974 S.W.2d 200, 203 (Tex. App.—San Antonio 1998, no pet.). The contours of the defense of laches have been described as follows:

> The application of laches, however, is usually limited to cases arising out of equity or actions at law that are essentially equitable in character. Furthermore, this Court has held "laches . . . [is] peculiarly available against the assertion of equitable rights, and may not be invoked to resist the enforcement of a purely legal right."

*Wayne*, 52 S.W.3d at 415 (citations omitted).

The present case involves contractual claims and causes of action for defamation, emotional distress, and statutory violations—all legal rights. Watson has a complete, adequate, legal remedy in the form of a suit for damages. Here, Watson seeks only a legal remedy, money damages. This is a claim based in law, no specific performance or injunctive relief is requested. We conclude that the defense of laches does not apply in this case.

of action asserted by Watson, we reverse the summary judgment and remand this cause to the trial court for further proceedings.

                                        Josh R. Morriss, III
                                        Chief Justice

Date Submitted:        August 9, 2010
Date Decided:          October 21, 2010